# Biskup *v.* Biskup, Appellant.

*Divorce—Cruel and Barbarous treatment—Indignities—Evidence—Sufficiency.*

In an action for a divorce on the ground of cruelty and indignities to the person, a decree is properly granted, where the libel is sufficiently supported by the evidence.

Blows, vile language, false accusations and exclusion from his house without a reasonable excuse, all extending over a long period, constituted the treatment which entitled the libellant to a divorce.

Argued October 12, 1926. Appeal No. 97, October T., 1926, by respondent, from decree of C. P. No. 4, Philadelphia County, March T., 1925, No. 456, in the case of Louis Biskup v. Barbara Biskup. Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN and CUNNINGHAM, JJ. Affirmed.

Libel in divorce. Before, FINLETTER, J.

The facts are stated in the opinion of the Superior Court.

The case was referred to George W. Shoemaker, Esq., as Master, who recommended that a divorce be granted. On exceptions to the master's report, the court dismissed the exceptions, and granted the divorce. Respondent appealed.

*Error assigned,* among others, was the order of the court.

*Clinton A. Sowers,* and with him *Frederick Beyer,* for appellant.

*Joshua R. Serfass,* for appellee

OPINION BY LINN, J., November 17, 1926:

This appeal is from a decree of divorce, granted to a husband on the ground of cruel and barbarous treatment and indignities to his person, rendering his condition intolerable and life burdensome. The record shows a course of conduct on the part of the respondent wife requiring an affirmation of the decree.

For no apparent provocation, she struck him twice on the head with a milk bottle, dazing him and inflicting a scalp wound. It was of such character that when he went to work shortly afterward, his foreman declined to permit him to remain at work but required him to leave to have his wound attended to. For some weeks he suffered from the effect of these blows, and for a long time was unable to do as much work as he had been doing before. Concerning this assault and its effects there is ample corroboration.

The parties frequently quarreled about money; the wife was dissatisfied with what the husband contributed to her. He was employed during all of the period involved, at the Stetson hat factory and received $28 a week. Of that sum he gave her $19 for household purposes. In 1917 he bought a $6500 house, paying $2100 in cash and a mortgage for the balance. This

house they occupied together until January 1925, when she declined to permit him to enter it. In addition to the part of his wages she received from him weekly, she received and retained for her own purposes $35 a month, obtained from a tenant of the 2nd floor of the house. From the wages he retained, he paid the taxes on the house, the interest on the mortgage and so reduced the principal that at the time of the hearing but $300 remained due on the mortgage. From all this we gather that he was both industrious and frugal, and that there is no justification for the wife's complaint that she received an inadequate part of his income.

It also appeared (and this remote transaction is referred to only as throwing some light on the wife's attitude to her husband's earnings), that in 1912, about two years after they were married, he received $145.93 at one time and he gave her $145, asking that she put the money away because he had been laid off for a week. She left his house the next morning; moved part of the furniture away; gave him $10 out of the $145; stayed away about six weeks, and after having spent the money, returned to him.

At times she declined to get his meals and frequently called him opprobrious names and applied filthy epithets to him. Once he succeeded in taking away from her a club with which she was about to strike him.

On January 1, 1925, when he returned home after a New Year celebration, she declined to admit him to the house; again on the 2nd, she denied him admission; when he returned again on the 3rd she had changed the lock on the door and told him he could no longer live in the house, though it was his own. After that she applied to the Municipal Court for an order for support for herself and children and the court declined to make the order, making an order for the support of their two children only.

To the foregoing should be added the following from the opinion of the learned court below: ''She is a woman of a violent and uncontrolled temper. Her conduct and the language with which she at times addressed him in the presence of their children, even if judged by the standard of manners of the uncouth Czecho-Slovakian peasant [both parties were born in Bohemia] was vulgar, profane and insulting in the extreme. For four years she deserted his bed, threatened to obtain from other men the gratification of her sexual desires, trumped up against him the groundless charge that he was afflicted with a venereal disease (of which she gave utterance to the officials of the Municipal Court), threatened to poison him, in order to obtain his property, and finally, as above mentioned, locked him out of his own house, without a reasonable excuse.''

The decree is affirmed.